# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

RANDY CLARK,

    Plaintiff,

vs.

EAGLE OTTAWA, LLC,

    Defendant.

No. 06-CV-2028-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

I.    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . 2

III.    *JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    *THE ARGUMENTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    *Defendant's Arguments* . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    *Plaintiff's Response* . . . . . . . . . . . . . . . . . . . . . . . . 4

V.    *MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)* . . . . . . . . . . . . 4

VI.    *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

VII.    *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.    *Public Policy Claim* . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.    *FMLA Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        1.    *NLRA preemption* . . . . . . . . . . . . . . . . . . . . . . . 11

        2.    *LMRA preemption* . . . . . . . . . . . . . . . . . . . . . . . 18

    C.    *Paragraphs 10 Through 18 of the Amended Complaint* . . . . . . . . 19

VIII.    *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I. INTRODUCTION

The matters before the court are Defendant Eagle Ottawa, LLC's Motion to Dismiss (docket no. 3) and its Motion to Dismiss Amended Complaint (docket no. 14).

## II. RELEVANT PROCEDURAL HISTORY

On March 30, 2006, Plaintiff Randy Clark filed a Petition at Law against Defendant in the Iowa District Court in and for Black Hawk County. Count I of the Petition alleges two violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq.* The two claims alleged in Count I are an FMLA interference claim and an FMLA retaliation claim (collectively referred to herein as "FMLA claims"). Count II alleges a common law claim of wrongful termination in violation of Iowa public policy ("public policy claim").

On April 24, 2006, Defendant removed the case to this court. On April 27, 2006, Defendant filed a Motion to Dismiss the public policy claim and partial dismissal of the FMLA claims. On May 12, 2006, Plaintiff filed a Resistance to Defendant's Motion to Dismiss ("First Resistance"). On July 6, 2006, Defendant filed a Reply Brief in Support of Defendant's Motion to Dismiss ("First Reply").[1]

On November 9, 2006, with the court's permission, Plaintiff filed an Amended Complaint. The Amended Complaint sets forth the same claims, that is, the FMLA claims and the public policy claim.

On November 9, 2006, Defendant filed the Motion to Dismiss Amended Complaint. On November 21, 2006, Plaintiff filed a Resistance to Defendant's Motion to Dismiss Amended Complaint ("Second Resistance"). On December 4, 2006, Defendant filed a Reply Brief Re Motion to Dismiss Amended Complaint ("Second Reply").

---

[1] Defendant was late in filing his First Reply. *See* LR 7.1(g) (providing a party five days to reply to a resistance); *see also* LR 6.1 (providing three extra days for electronic filings).

2

Finding the Motion to Dismiss and Motion to Dismiss Amended Complaint to be fully submitted and ready for decision, the court turns to consider them.

## III. JURISDICTION

Pursuant to 28 U.S.C. § 1331, the court has federal question jurisdiction over Plaintiff's FMLA claims. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Pursuant to 28 U.S.C. § 1367, the court has supplemental jurisdiction over the public policy claim. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action with such original jurisdiction that they form part of the same case or controversy . . . ."). *But see* 28 U.S.C. § 1367(c) (granting the district court discretion to decline to exercise supplemental jurisdiction over state law claims under certain circumstances). The court is satisfied that it has subject matter jurisdiction over each of the claims.

## IV. THE ARGUMENTS

### A. *Defendant's Arguments*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant moves for the dismissal of the public policy claim and the partial dismissal of the FMLA claims.

Defendant states four alternative reasons why the public policy claim should be dismissed. The reasons are as follows:

> (a) as a matter of law, the Iowa Supreme Court has not recognized a claim for wrongful termination in violation of federal policies such as those contained in the FMLA, [the National Labor Relations Act, 29 U.S.C. § 158 *et seq.* ("NLRA")], and [the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.* ("LMRA")]; (b) as a matter of law, Plaintiff's wrongful termination claim is pre-empted by the NLRA to the extent that it is based on discrimination or retaliation for union activity; (c) as a matter of law, Plaintiff's claim for wrongful termination is pre-empted by the LMRA to the extent that it is based on violation of Plaintiff's contractual

3

> rights; [and] (d) as a matter of law, Iowa would not recognize a claim for wrongful termination in violation of the policies set forth in the FMLA because the FMLA itself provides the exclusive remedy, or an adequate remedy, for its violation.

Motion to Dismiss (docket no. 3), at ¶ 6.

Next, Defendant argues for partial dismissal of Plaintiff's FMLA claims. Defendant argues that, to the extent that the FMLA claims are based either on (1) discrimination and retaliation for union activities or (2) Plaintiff's employment contract, they should be dismissed. Defendant argues that Plaintiff's FMLA claims are pre-empted by the NLRA and the LMRA.

Finally, Defendant argues that part of the factual section of the Amended Complaint, that is, paragraphs 10 through 18, should be stricken.

### B. *Plaintiff's Response*

Plaintiff responds that the NLRA does not apply to his FMLA claims or his public policy claim because the claims "arise specifically out of the FMLA and out of a recognition of Iowa's public policy." Plaintiff argues that, because the court will not be asked to determine whether his discharge was warranted under the terms of the Collective Bargaining Agreement ("CBA"), the LMRA does not preempt his claims. Further, Plaintiff argues that the FMLA does not preempt his public policy claim because, "[s]o long as the FMLA does not constitute a necessary and essential element of the Plaintiff's cause of action, the FMLA does not completely preempt a wrongful termination claim." First Resistance (docket no. 4-2) at 4.

### V. MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

The issue on a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims.'" *Estate of Rosenberg ex rel. Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.

4

1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).  In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged by the complaining party are true and must liberally construe those allegations in the light most favorable to the non-movant.  *Gross v. Weber,* 186 F.3d 1089, 1090 (8th Cir. 1999).  Nonetheless, the court is mindful that in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), it must "reject conclusory allegations of law and unwarranted inferences." *Silver v. H & R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997) (citing *In re Syntex Corp. Secs. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)); *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990) (ruling the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts" (citations omitted)).

"A court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire,* 112 F.3d 1339, 1347 (8th Cir. 1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).  Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  Thus, "[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) (internal quotation marks and ellipses omitted).

## VI. FACTS[2]

For purposes of the Motion, the court accepts the following facts, as alleged in Plaintiff's Amended Complaint, as true:

Plaintiff is a resident of LaPorte City, Iowa. Defendant is a Wisconsin limited liability company with its home office located in Milwaukee, Wisconsin. Defendant operates a facility in Waterloo, Iowa ("Facility"), and employs more than fifty employees.

Plaintiff began working at the Facility on April 29, 2001. Plaintiff is a union member.[3]

Prior to beginning his employment with Defendant, Plaintiff experienced problems with migraine headaches. Within the twelve months preceding January of 2005, Plaintiff had worked 1250 hours for Defendant. Plaintiff received certification from his physician for intermittent leave under the FMLA due to his migraines. Defendant accepted the certification and allowed Plaintiff to take intermittent FMLA leave. Defendant periodically required Plaintiff to provide certification of his medical condition. If Plaintiff had two absences within a thirty-day period, Defendant required Plaintiff to recertify.

In May of 2002, Plaintiff became the chief union steward at the Facility. Then, for the first time, Defendant's Human Resources Manager, Lance Dunn, informed Plaintiff that Defendant would require him to recertify for intermittent FMLA leave every thirty days. This requirement pertained to Plaintiff regardless of whether he had two periods of FMLA leave within a thirty-day period. Defendant also required Plaintiff to complete other leave forms after every period of FMLA leave.

---

[2] In Defendant's Motion to Dismiss and Motion to Dismiss Amended Complaint, it seeks to strike factual paragraphs from the Amended Complaint. The court declines to strike facts from the Amended Complaint, as discussed *infra* in Part VII(C).

[3] The Amended Complaint does not mention the CBA. Plaintiff discusses the CBA for the first time in the First Resistance.

Defendant did not require other employees to recertify for intermittent FMLA leave as often as it required Plaintiff to recertify. Defendant also did not require other employees who took FMLA leave to fill out the other leave forms after every period of FMLA leave.

On February 1, 2003, Plaintiff filed a complaint with the National Labor Relations Board ("NLRB"). In such complaint, Plaintiff alleged unequal treatment of a union official. He complained that Defendant required him to recertify for FMLA leave every thirty days.

After Plaintiff filed the NLRB complaint, Plaintiff and Defendant entered into an agreement. Defendant agreed to treat Plaintiff the same as the other employees if he dismissed his NLRB complaint. Plaintiff dismissed his NLRB complaint, and, Defendant only required him to complete periodic recertifications. However, Dunn became hostile toward Plaintiff.

Plaintiff was on FMLA leave between December 27, 2004, and January 24, 2005, due to the migraines and an associated change in his medications. During that period of leave, Plaintiff routinely called in to Defendant's automated messaging system and advised Defendant that he would not be able to attend work. Plaintiff also routinely called Dunn and explained that (1) he was suffering from migraines, (2) his physician was changing his medications and (3) he was not able to work. During that period of leave, Defendant did not request any additional certification regarding Plaintiff's entitlement to leave. Plaintiff returned to work on January 24, 2005.

Several days after January 24, 2005, Plaintiff again took FMLA leave until February 14, 2005.

7

When Plaintiff returned to work on February 15, 2005, Defendant did not allow Plaintiff to work.[4] On February 15, 2005, Dunn informed Plaintiff that Defendant needed additional certification from Plaintiff's physician for the period of leave Plaintiff took between January 11, 2005, and January 24, 2005. Plaintiff contacted his physician, obtained a new FMLA certification and provided the recertification to Dunn. Dunn told Plaintiff that the recertification was inadequate.

On March 15, 2005, Plaintiff's physician faxed a letter to Dunn stating that Plaintiff still suffered from migraines and would likely need intermittent leave for periods in excess of twenty-four hours. Plaintiff then contacted Dunn to determine when he could return to work. Dunn told Plaintiff that the information his physician provided was not adequate. Dunn requested additional documentation from Plaintiff.

Also, on March 15, 2005, Plaintiff contacted the U.S. Department of Labor ("DOL") to discuss the FMLA's requirements and his rights under the FMLA. A DOL representative advised Plaintiff to contact Dunn and to inform Dunn that Defendant must allow him to return to work. Plaintiff contacted Dunn pursuant to the DOL representative's advice. Plaintiff informed Dunn of his contacts with the DOL. Plaintiff also told Dunn that the DOL representative said that Defendant had to allow him to return to work.

On March 28, 2005, Defendant terminated Plaintiff's employment.

## VII. ANALYSIS

### A. Public Policy Claim

As stated above in Part IV(A), Defendant asserts four reasons why Plaintiff's public policy claim should be dismissed pursuant to Rule 12(b)(6). Given its conclusion that

---

[4] This fact is not explicit in the Amended Complaint. Viewing the facts in the Amended Complaint in the light most favorable to Plaintiff, however, the court reads paragraphs 25 through 36 of the Amended Complaint together and finds that Plaintiff was not permitted to work after he returned on February 15, 2005.

Plaintiff did not properly allege the public policy claim, the court need not discuss Defendant's other arguments.

A common law claim for wrongful discharge in violation of public policy derives from Iowa's "at-will" employment doctrine. *See generally Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 282-83 (Iowa 2000). The at-will employment doctrine provides that an employer may discharge an at-will employee at any time, for any reason or no reason at all. *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 281 (Iowa 1995). One of the two exceptions to the at-will rule is when a discharge is in violation of the "well recognized and defined public policy of the state." *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560 (Iowa 1988); *see also Fitzgerald*, 613 N.W.2d at 283 (explaining that the Iowa Supreme Court "must proceed cautiously when asked to declare public policy to support an exception to the at-will doctrine, and [it must] only utilize those policies that are well recognized and clearly defined").

Plaintiff phrased his public policy claim in a very unusual manner. That is, it reads more like a claim for a declaratory judgment than a claim for monetary relief. It provides, in part:

> As a result of the aforementioned, [Plaintiff] requests relief as follows:
>
> (a) An adjudication that [Defendant] has violated Iowa Public policy by terminating him for filing a[n] [NLRB] complaint, serving as chief union steward, subsequently contacting the [DOL] to discuss filing a complaint:
>
> (b) Compensation for back pay;
>
> (c) Punitive damages;
>
> (d) The costs of this action.

Amended Complaint (docket no. 11), at ¶ 69 (punctuation and grammatical errors in original). Construing the Amended Complaint in the light most favorable to Plaintiff, the court finds that Plaintiff is attempting to make a claim for wrongful discharge in violation

9

of public policy. *See Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681, 683 (Iowa 2001) (discussing the fact that Iowa's tort of wrongful discharge in violation of public policy was adopted by the Iowa Supreme Court in 1988). That is, he is claiming that Iowa has public policies that prohibit employers from terminating an employee because (1) the employee is a chief union steward; (2) the employee filed a complaint with the NLRB; or (3) the employee contacted the DOL to discuss filing a complaint.

In order to state a claim for wrongful discharge in violation of public policy, Plaintiff must show that he is an at-will employee. *See Lloyd v. Drake Univ.*, 686 N.W.2d 225, 228 (Iowa 2004) (discussing the plaintiff's at-will employment status and listing the four elements of a claim alleging wrongful discharge in violation of public policy). Plaintiff cannot avail himself of the protections of Iowa's public policy exceptions to the at-will employment doctrine, unless he has alleged that he is an at-will employee. *See Fitzgerald*, 613 N.W.2d at 280-81 (discussing, at length, the origins of the at-will employment doctrine, the exceptions recognized by the Iowa Supreme Court and "the elements of an action to recover damages for discharge in violation of public policy"). Viewing the Amended Complaint in the light most favorable to Plaintiff, *Gross*, 186 F.3d at 1090, it is not clear that Plaintiff was an at-will union employee.

Most collective bargaining agreements contain limitations on the right of the employer to discharge its union employees. *See* F. Harper, et al., The Law of Torts § 6.7 (2d ed. 1986); *see also* 46 Am. Jur. Proof of Facts 3d 99, § 2 (Supp. 2006) (explaining that "the at-will doctrine remains the general rule absent legislation, an employment contract, civil service protection or a collective bargaining agreement which negates the at-will status"). Thus, many union employees are contract employees. *See generally Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1445 (8th Cir. 1994) (applying Missouri's at-will employment doctrine and affirming the district court's grant of summary judgment because the complaining employee had "worked as a contract employee under a union

10

collective bargaining agreement, and . . . therefore he could not claim protection from the public policy exception, which applies only to at-will employees"). Iowa courts have determined, however, that some union employees who are subject to collective bargaining agreements are at-will employees. *See, e.g.*, *Norton v. Adair County*, 441 N.W.2d 347, 362 (Iowa 1989) (discussing the employee's procedural due process challenge and explaining that "she was an employee at-will, who could be fired at any time, for any reason, notwithstanding [the provision of] the collective bargaining agreement" which prohibited discharge of an employee without proper cause); *see also Wright v. Waterloo Water Works*, 493 N.W.2d 889, 895 (Iowa Ct. App. 1992) (affirming the trial court's findings that the plaintiff was an at-will employee and that "the terms of the employment contract between [the employee] and [the employer] were governed by the collective bargaining agreement which existed between [the employer] and [the employee's union]"). Therefore, it is unclear from the allegations in the Amended Complaint whether Plaintiff was an at-will union employee or a contract union employee.

The court deems it appropriate to dismiss Plaintiff's public policy claim pursuant to Rule 12(b)(6), because it does not state a claim upon which relief can be granted. The public policy claim fails because Plaintiff did not allege in the Amended Complaint that he was an at-will employee.

### B. FMLA Claims

As stated above in Part IV(A), Defendant asserts that Plaintiff's FMLA claims should be dismissed pursuant to Rule 12(b)(6) because they are preempted by the NLRA and the LMRA. The court addresses Defendant's arguments in turn.

#### *1. NLRA preemption*

Section 7 of the NLRA gives employees the right to organize and engage in collective bargaining. 29 U.S.C. § 157. Section 8 of the NLRA prohibits "unfair labor practices" by an employer. 29 U.S.C. § 158. "*Garmon* preemption . . . protects the

11

jurisdiction of the [NLRB] . . . by displacing state jurisdiction over conduct which is arguably within the compass of § 7 or § 8 of the [NLRA]." *Williams v. Watkins Motor Lines, Inc.*, 310 F.3d 1070, 1072 (8th Cir. 2002) (quotations and citations omitted); *see also San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959) ("When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted."); *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 276 (1971) (explaining that the NLRA "pre-empts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the [NLRA]" (citing *Garmon*, 359 U.S. at 244)); *Vaca v. Sipes*, 386 U.S. 171, 179 (1967) ("[A]s a general rule, neither state nor federal courts have jurisdiction over suits directly involving 'activity [which] is arguably subject to § 7 or § 8 of the [NLRA].'" (quoting *Garmon*, 359 U.S. at 245)).

The term "arguably" in *Garmon* indicates that "the party claiming preemption is required to demonstrate that the party's case is one that the [NLRB] could legally decide in the suing employee's favor." Ann K. Wooster, Annotation, *Construction and Application of Garmon Preemption Doctrine by Federal Courts*, 2003 A.L.R. Fed. 1, § 6 (2003); *see also Williams*, 310 F.3d at 1073 (rejecting an argument that certain activity was "arguably concerted activity" subject to the NLRA simply because the issue was litigated, and stating that such an interpretation of the *Garmon* doctrine would "vastly expand the jurisdiction of the NLRB"). "[A] party asserting preemption must advance an interpretation of the NLRA that is not plainly contrary to its language and that has not been authoritatively rejected by the courts or the [NLRB]. The party must then put forth enough evidence to enable the court to find that the [NLRB] could uphold a claim based on such an interpretation . . . ." Wooster, 2003 A.L.R. Fed. 1, § 6; *see also Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 396 (1986) (explaining that the party asserting preemption

12

bears the burden of showing that the challenged activity is arguably prohibited by the NLRA). "The Supreme Court has also explained that, in determining whether a State cause of action is preempted, the critical inquiry is whether the controversy presented to the court is identical to one that could have been presented to the NLRB." *Webco Indus., Inc. & United Steel Workers of Am.*, 337 NLRB 361, 362 (2001) (citing *Roebuck & Co. v. Carpenters*, 436 U.S. 180, 197 (1978)). Moreover, *Garmon* preemption should not be found absent "compelling congressional direction." *Garmon*, 359 U.S. at 244.

In a case involving the Employee Retirement Income Security Act of 1974 ("ERISA"), the Eighth Circuit Court of Appeals recently expressed doubt that the *Garmon* doctrine applies in cases involving conflicts between the NLRA and another federal statute:

> The rationale behind the *Garmon* preemption doctrine derives from the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2; *Smith v. Nat'l Steel & Shipbuilding Co.*, 125 F.3d 751, 755 (9th Cir. 1997); *Britt v. Grocers Supply Co.*, 978 F.2d 1441, 1445-46 (5th Cir. 1992). "*Garmon* and its progeny [were] primarily concerned with the conflict between federal labor policy and state laws." *Smith,* 125 F.3d at 755. In this case, unlike in *Garmon*, the potential conflict is not between federal and state law. Rather, it is between two federal statutes. The Supremacy Clause is not implicated when a case involves a potential conflict between federal statutes. *Id.* The Supreme Court and our sister circuits have suggested in several instances that *Garmon* preemption is not implicated where the potential conflict is between two federal statutes and not between a federal law and a state law. *See, e.g., Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,* 493 U.S. 67, 75-76 (1989) (federal court has jurisdiction where the conflict is between a fair representation claim and the [NLRA]); *Int'l Bd. of Boilermakers v. Hardeman,* 401 U.S. 233, 235-38 (1971) (federal court has jurisdiction where the conflict is between Labor-Management Reporting and Disclosures Act and the [NLRA]); *Smith*, 125 F.3d at 756 (federal court has jurisdiction where the conflict is between the ADA and the

13

> [NLRA]); *Britt*, 978 F.2d at 1447 (federal court has jurisdiction where the conflict is between the [Age Discrimination in Employment Act of 1967 ("ADEA")] and the [NLRA]); *United States v. Boffa,* 688 F.2d 919, 931-33 (3d Cir. 1982) (federal court has jurisdiction where the conflict is between a federal criminal statute prohibiting mail fraud and the [NLRA]). Accordingly, in this case, it is questionable whether the *Garmon* doctrine is implicated where any potential conflict is between ERISA and the [NLRA].

*Lupiani v. Wal-Mart Stores, Inc.*, 435 F.3d 842, 846 (8th Cir. 2006); *see also Tamburello v. Comm-Tract Corp.*, 67 F.3d 973, 976 n.2 (1st Cir. 1995) (noting, without deciding, that the *Garmon* doctrine might not apply to a conflict involving the NLRA and another federal statute). *Cf. Willis v. Pac. Maritime Ass'n*, 236 F.3d 1160, 1168 (9th Cir. 2001) ("A preemption analysis simply is inapplicable where conflict is between two federal statutes, such as the [Americans with Disabilities Act] and the NLRA, rather than between a federal and state law."). The court concludes *infra* that the FMLA and the NLRA are not in conflict, and, therefore, it need not decide whether *Garmon* preemption is implicated where there is a conflict between two federal statutes.

As previously stated, Count I of the Amended Complaint alleges two types of claims under the FMLA: interference and retaliation. *See Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) ("Two types of claims exist under the FMLA: (1) 'interference' or '(a) (1)' claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA and (2) 'retaliation' or '(a)(2)' claims in which the employee alleges that the employer discriminated against him for exercising his FMLA rights." (quoting 29 U.S.C. § 2615(a)(1)-(2))). To prove his FMLA interference claim, Plaintiff must "'show only that [he] was entitled to the benefit denied.'" *Id.* (quoting *Russell v. N. Borward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003)). Thus, Plaintiff "can prove interference with an FMLA right regardless of [Defendant's] intent." *Id.*

14

As for Plaintiff's FMLA retaliation claim, he

> can prove [FMLA] retaliation circumstantially, using a variant of the *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792, 802-03 (1973),] method of proof. To establish a prima facie case of retaliation, [Plaintiff] must show that [he] exercised rights afforded by the [FMLA], that [he] suffered an adverse employment action, and that there was a causal connection between [his] exercise of rights and the adverse employment action. *Darby* [*v. Bratch*]*,* 287 F.3d [673,] 679 [(8th Cir. 2002)].

*Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002) (footnote omitted). If Plaintiff can establish a prima facie case of FMLA retaliation, then the burden shifts to Defendant to articulate a legitimate nondiscriminatory reason for the termination. *Stallings*, 447 F.3d at 1051. "Once [Defendant] comes forward with evidence of a reason other than retaliation for [Plaintiff's] discharge, the employee is left with the opportunity to demonstrate that the proffered reason is not the true reason for the employment decision." *Id.* (quotations omitted).

These elements of Plaintiff's FMLA claims are not "inextricably intertwined" with the NLRA. *Cf. Lupiani*, 435 F.3d at 846 (finding that the plaintiff's ERISA claims were not inextricably intertwined with the NLRA). It is possible to determine whether Defendant violated Plaintiff's right to take intermittent FMLA leave and whether Defendant retaliated against Plaintiff "without reference to substantive labor law." *Id.* Moreover, this controversy over Plaintiff's requests to take medical leave due to migraines could not have been presented to the NLRB. *See Webco Indus., Inc.*, 337 NLRB at 362 (explaining that "the critical inquiry" in *Garmon* preemption cases "is whether the controversy presented to the court is identical to one that could have been presented to the NLRB"). To determine whether Defendant violated the FMLA, it is not necessary to decide whether Defendant's actions violated §§ 7 or 8 of the NLRA. The two federal statutes are not in conflict. *Cf. Lupiani*, 435 F.3d at 846 (explaining that the court "need

15

not decide whether the *Garmon* preemption doctrine is implicated because ERISA and the [NLRA] are not in conflict"). Therefore, without deciding whether *Garmon* preemption is implicated, the court holds that Plaintiff's FMLA claims are not preempted by the NLRA.[5]

Alternatively, even if the two federal statutes, that is, the NLRA and the FMLA, are in conflict in this case and *Garmon* preemption is applicable,[6] the court would hold that

---

[5] The court notes that its conclusion finds support in the purpose behind *Garmon* preemption because determining whether an employer's actions are discriminatory is an issue that is within the competence of this court. The Supreme Court determined that the NLRB should have primary jurisdiction over substantive labor law issues because Congress created the NLRB for the purpose of regulating that particular subject matter. *See Hardeman,* 401 U.S. at 238 (explaining "that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over"). The Ninth Circuit Court of Appeals ably stated that "[t]he determination of unlawful discriminatory employment practices is hardly a question beyond 'the conventional experience of judges,' nor can it be said to raise [an] issue 'within the special competence of the NLRB.'" *Smith*, 125 F.3d at 756 (quoting *Hardeman*, 401 U.S. at 238-39).

[6] Defendant asserts that Plaintiff's FMLA claims involves an unfair labor practice prohibited under § 8(a)(3) of the NLRA. *See* Brief in Support of Motion to Dismiss (docket no. 3-2, at 3) ("Section 8(a)(3) of the NLRA, 28 [sic] U.S.C. § 158(a)(3), makes it unlawful for an employer to discriminate in regard to hire or tenure of employment to encourage or discourage membership in any labor organization."). Defendant relies on *Tamburello v. Comm-Tract Corp.*, 67 F.3d 973, 976 (10th Cir. 1985), a Tenth Circuit Court of Appeals case, and summarily argues that Plaintiff's FMLA claims are preempted by the NLRA. *Id*. Plaintiff responds that the NLRA does not regulate the activity at issue, that is, the right to take FMLA leave and to contact the DOL.

The NLRA provides, in pertinent part: "It shall be an unfair labor practice for an employer— . . . by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . ." 29 U.S.C. § 158(a)(3). Plaintiff's Amended Complaint alleges that Defendant treated him differently after he became the chief union steward.

(continued…)

Plaintiff's FMLA claims falls under the well-recognized "collateral issue" or "peripheral concern" exception to *Garmon* preemption. *See Garmon*, 359 U.S. at 243 (explaining that there is an exception to the NLRB's primary jurisdiction where the conduct at issue is of only "peripheral concern" to federal labor policy). "Under this exception, federal courts may decide labor questions that emerge as collateral issues in suits brought under statutes providing for independent federal remedies." *Smith*, 125 F.3d 756 n.7 (citing *Connell Constr. v. Plumbers & Steamfitters Local Union No. 100*, 421 U.S. 616, 626 (1975)); *see also Connell Constr.*, 421 U.S. at 626 (holding that a federal antitrust law was not preempted by the NLRA under the collateral issue exception). *Cf. Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 780, n.7 (9th Cir. 2001) (explaining that the collateral issue exception is not applicable where a claim is dependent on a claim under the NLRA).

Other courts have held that federal anti-discrimination laws fall under this exception. For example, in *Britt v. Grocers Supply Co., Inc.*, 978 F.2d 1441 (5th Cir.

---

[6](…continued)

Defendant argues that Plaintiff claims he was discriminated against by Defendant in the terms or conditions of his employment due to his union membership and involvement. Therefore, Defendant argues that Plaintiff's claim arguably involves a violation of § 8(a)(3) of the NLRA by Defendant. Because the NLRB has primary jurisdiction over such § 8 unfair labor practices, Defendant argues that Plaintiff's FMLA claims are preempted under the *Garmon* preemption doctrine.

Both parties fail to address the exemptions to the *Garmon* preemption doctrine, which may be applicable. There are at least three recognized exceptions to the doctrine. First, there is the collateral issue or peripheral concern exception, which the court will discuss in further detail below. Second, the Supreme Court has recognized that state action is not preempted where the regulated conduct impacts interests that are "so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, courts cannot infer that Congress has deprived the states of the power to act." *Garmon*, 359 U.S. at 243. Finally, "[c]ourts have recognized a third exception to the *Garmon* doctrine where Congress has expressly carved out such an exception to the NLRB's primary jurisdiction." *Chaulk Services, Inc. v. Mass. Comm'n Against Discrimination*, 70 F.3d 1361, 1365 n.2 (1st Cir. 1995) (citing cases).

17

1992), the Fifth Circuit Court of Appeals held that, because the ADEA provided an "independent federal remedy," it fell under the collateral issue exception and was not preempted by the NLRA. *Id.* at 1446; *see also id.* at 1447 & nn.9 & 10 (holding that claims under Title VII are not preempted by the NLRA); *Guerra v. Manchester Terminal Corp.*, 498 F.2d 641, 658 n.46 (5th Cir. 1974), *overruled on other grounds, then vacated, then reinstated on remand, then cert. denied* ("[T]hough Title VII, § 1981, and section 8 of the NLRA may overlap in the area of employment discrimination, their confluence must not be exaggerated. . . . [A] plaintiff does not lose his right to an adjudication regarding the causes of action created by Title VII or § 1981 simply because the conduct of which he complains also offends section 8 of the NLRA."). Thus, the court alternatively holds that Plaintiff's FMLA claims fall under the collateral issue or peripheral concern exception to *Garmon* preemption.

### 2. *LMRA preemption*

Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a); *see also Trustees of Twin City Bricklayers Fringe Ben. Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 330 (8th Cir. 2006) ("In § 301 Congress provided a federal cause of action for violation of contracts between employers and labor organizations, a remedy distinct from the grievance procedures established under the NLRA."). "[S]tate law is pre-empted by § 301 [of the LMRA]. . . only if such application requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 411 (1988) (emphasis added). "[A]ny state law claim

18

founded on rights created by a [collective bargaining agreement] is preempted under § 301, [*Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*], 369 U.S. 95, 102-03 (1962), as well as any claim whose resolution is substantially dependent upon or 'inextricably intertwined' with interpretation of the terms of such an agreement." *Superior Waterproofing, Inc.*, 450 F.3d at 330 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)). *Cf. Lingle*, 486 U.S. at 411 (holding that an employee's claim of retaliatory discharge for filing a workers' compensation claim was not preempted since the claim could be resolved without interpreting the collective bargaining agreement).

LMRA preemption applies to state law claims, not claims based upon federal statutes. *See generally Carlson v. Arrowhead Concrete Works, Inc.*, 445 F.3d 1046, 1050-51 (8th Cir. 2006) (discussing how LMRA preemption is "complete preemption" of state law claims and stating that "reliance on the terms of a [collective bargaining agreement] to establish a state law claim can lead to complete preemption"). *But see Carter v. Ford Motor Co.*, 121 F.3d 1146, 1148-49 (8th Cir. 1997) (addressing the plaintiff's claims under the FMLA *and* the LMRA, affirming the district court's grant of summary judgment in favor of the employer on both claims and affirming the district court's finding that the LMRA preempted the plaintiff's state law tort claims because the tort claims were "substantially dependent upon an analysis of the terms or provisions of a collective bargaining agreement"). Therefore, Plaintiff's FMLA claims cannot be preempted by the LMRA because the FMLA is not a state law claim.

### C. *Paragraphs 10 Through 18 of the Amended Complaint*

In Defendant's Motion, it argues that certain factual paragraphs in Plaintiff's Amended Complaint should be stricken by the court. Defendant summarily argues that paragraphs 10 through 18 of the Amended Complaint should be stricken because they relate "to retaliation for union activities." Because Defendant has provided no citations

19

to authority and no argument explaining why these factual paragraphs should be stricken, the court declines to strike them. *See* LR 7.1 (requiring that briefs on motions contain "citations to the authorities upon which the moving party relies").

## *VIII. CONCLUSION*

For the foregoing reasons, the court hereby **ORDERS**:

(1) Defendant's Motion to Dismiss (docket no. 3) and its Motion to Dismiss Amended Complaint (docket no. 14) are **GRANTED IN PART** and **DENIED IN PART**; and

(2) Count II of Plaintiff's Amended Complaint (docket no. 11) is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

**DATED** this 20th day of February, 2007.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA